IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:23-CV-00001-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | O R D E R |
| | ) | |
| ROBERT D. WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on eight motions: (1) the United States' motion to strike defendant's affirmative defenses, [DE 11]; (2) the United States' motion for court-hosted mediation, [DE 21]; (3) the defendant's motion to stay, [DE 25]; (4) the United States' motion to compel the production of financial records, [DE 31]; (5) non-parties Ollin B. Sykes and Sykes & Company, P.A.'s motion to quash, [DE 36]; (6) the United States' motion for protective order, [DE 40]; (7) the United States motion for limited modification of the scheduling order, [DE 42]; and (8) defendant's motion for a protective order, [DE 44].These motions have been fully briefed and are ripe for decision.

For the following reasons, the Court grants the United States' motion to strike, denies the United States' motion for court-hosted mediation, denies White's motion to stay, grants the United States' motion to compel, denies the motion to quash, grants the United States motion for protective order and adopts its proposed order, denies the Whitte's motion for a protective order, and grants in part the United States motion for limited modification of the scheduling order.

## BACKGROUND

Because the parties are familiar with each other and the issues, the Court forgoes reciting the facts extensively. Instead, the Court offers a condensed primer on the motions currently pending before it.

This is a civil enforcement action arising from the construction and filing of bulkheads on Defendant Robert White's property abutting the Pasquotank River and Big Flatty Creek. The United States alleges that White constructed the bulkheads without permits in waters and wetlands protected by the Clean Water Act ("CWA") and then filled the bulkheads with sediment in violation of 33 U.S.C. § 1311(a). In his answer, White raises fourteen affirmative defenses. In response, the United States filed a motion to strike ten of the affirmative defenses as either legally insufficient or inadequately pleaded or both. (*See* [DE 9, 11].)

Shortly after the United States' motion to strike was fully briefed, the United States filed a motion for a court-hosted settlement conference. [DE 21]. White, in response, does not oppose alternative dispute resolution, but requests that it occur before a certified mediator instead. [DE 22].

While the case was pending, the Supreme Court issued its decision in *Sackett v EPA*, 598 U.S. 651 (2023), paring back the Environmental Protection Agency and the Army Corps of Engineers' expansive definitions of "waters of the United States" and clarifying the status of wetlands under the CWA. Predictably, this shift precipitated agency rulemaking to bring the Code of Federal Regulations in line with the definition set forth in *Sackett*. White moves this Court to stay all deadlines in the matter pending the promulgation of a new definition of "waters of the United States" by the EPA and the Army Corps. The United States responds that White has failed

2

to show that a stay is warranted and that it would only unnecessarily delay the proceedings. (*See* [DE 25, 30]).

The next group of motions concern the production of financial records from White, his business Frog Island Seafood, Inc, and his accountant Sykes & Company, P.A. The United States moves this Court to compel White to produce documents responsive to its first request for production [DE 32-2] and its subpoena to Frog Island [DE 32-10]. Sykes & Company moves the Court to quash the United States' subpoena. [DE 36]. The United States opposes that motion and requests the Court order Sykes to produce documents responsive to its subpoena [DE 36-1]. The United States also moves to modify the scheduling order entered on 20 April 2023 [DE 16] to accommodate its inability to discover responsive documents. [DE 42]. While those motions were pending, the parties negotiated a proposed consent protective order governing the disclosure of confidential information. They agree on most of the terms but remain at odds over others. As a result, the parties have submitted competing motions for protective orders, accompanied by proposed orders, for the Court's review. [DE 40, 44].

## DISCUSSION

### I. United States' Motion to Strike Affirmative Defenses.

Rule 12(f) authorizes a district court, upon a party's motion, to strike an insufficient defense from any pleading. Fed. R. Civ. P. 12(f). "A defense is insufficient if it is clearly invalid as a matter of law." *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 232 (E.D.N.C. 2010) (quotation marks and citation omitted). Motions to strike are "generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.' " *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). The decision to strike an affirmative defense is discretionary and absent a showing

3

of unfair prejudice to the movant courts generally refrain from striking affirmative defenses. *Lockheed Martin Corp. v. United States*, 974 F.Supp.2d 591, 593 (D. Md. 2013). Still, defenses that confuse the issues and would not constitute a valid defense under the facts alleged should be excised from the pleading. *Waste Management*, 252 F.3d at 347. When an affirmative defense fails as a matter of law, courts are not required to grant leave to amend. *See United States v. Google, LLC*, -- F.Supp.3d --, 2023 WL 6119965, at *4 (E.D. Va. Sept. 13, 2023); *See also Villa v. Ally Fin., Inc.*, No. 1:12-Cv-953, 2014 WL 800450, at *4 (M.D.N.C. Feb. 28, 2014).

The United States moves the Court to strike ten of the fourteen affirmative defenses that White raises in his answer. One group of affirmative defenses, the United States argues, should be dismissed because they are invalid as a matter of law. The other group, it argues, should be dismissed because they are inadequately pleaded. Some fall into both groups. This framework is useful, and the Court applies it in addressing each affirmative defense.

A. Affirmative Defenses the United States contends are legally invalid.

The United States argues that Affirmative Defense 2, Affirmative Defense 3, Affirmative Defense 4, Affirmative Defense 5, Affirmative Defense 12, and Affirmative Defense 13, are legally insufficient and should be struck accordingly.

Affirmative Defense 2 asserts estoppel, laches, unclean hands and other equitable defenses bar the United States from obtaining equitable relief. When undertaking the bulkheading and fill projects, White claims that he reasonably relied on affirmative actions taken by the government across a twenty-year period. According to White, he received a letter in 1995 from agents of the United States supposedly delegating the authorization of his construction activities to the North Carolina Division of Coastal Management. Then in 2015, a member of the Army Corps of Engineers visited White's property. After performing a preliminary jurisdictional determination,

4

that official purportedly made written and oral statements which gave White the impression that if North Carolina approved his project, then his project would not affect federal waters and he would not need federal permits. In 2018, another agent of the United States visited White's property to perform another jurisdictional determination. White contends that this agent knew of the 2015 preliminary jurisdictional determination yet identified a dramatically larger wetlands area on the same property. Finally, White claims that threats of government enforcement, including threats of arrest, have prevented him from using parts of his land for agricultural use. White seeks to estop the United State should it attempt to argue that White's discontinued agricultural use amounts to abandonment as converted farmland.

In response to White's allegations, the United States points out that many of his asserted equitable defenses cannot be asserted against the government. And, for those that arguably can be, that White's answer fails to allege sufficient facts to state the defense.

"It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940). *See also*, *United States v. Grimmel Indus., LLC*, No.1:12-CV-1103, 2018 WL 3730856, at * 5 (N.D.N.Y. Aug. 6, 2018) (granting motion to strike affirmative defense of laches against government enforcing the CWA). Accordingly, the Court grants the motion to strike to defendant's second affirmative defense to the extent it relies on laches without leave to amend.

When a litigant seeks to estop the government, he must satisfy the traditional elements of equitable estoppel with the additional requirement of showing affirmative misconduct by government agents. *Dawkins v. Witt*, 318 F.3d 606, 611–13 (4th Cir. 2023). Likewise, the defense of unclean hands requires allegations of misconduct. *In Re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liability Litigation*, 517 F.Supp.3d 994, 998 (N.D. Cal. 2021) (striking

5

unclean hands defense in SEC enforcement action on the ground that answer lacked sufficient allegations of misconduct). "Affirmative misconduct is an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require the government intend to mislead a party." *Dickow v. United States*, 654 F.3d 144, 152 (1st Cir. 2011) (quotation marks and citation omitted). White's answer is devoid of allegations that state, or permit a reasonable inference, that agents of the United States affirmatively misrepresented or concealed material facts. The arguments raised in White's brief in response are unpersuasive. Without affirmative misconduct, the affirmative defenses of estoppel and unclean hands are legally invalid. The Court, therefore, strikes Affirmative Defense 2 without leave to amend.

Affirmative Defense 3 is premised on allegations that the United States enforcement action stopped White from cultivating the land at issue, depriving him of a profitable and legal use of the property thereby causing him losses. As a result, White asserts that he is entitled to setoff or recoup his losses against any damages recovered by the United States. The United States moves to strike this theory on the grounds that setoff and recoupment enable a defendant to reduce damages and thus neither apply here because it seeks only civil penalties. Any claim for damages, the United States argues, would also be barred by principles of sovereign immunity.

White is correct that sovereign immunity does not categorically bar him from claiming recoupment when litigating against the United States.[1] He is not however in asserting that the United States' act of filing a lawsuit acts as a general waiver of sovereign immunity. *See* 6 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 1427 (3d ed.). Instead, federal courts

---

[1] Strictly speaking, defendant has labeled his request for recoupment and setoff as affirmative defenses while both are more accurately labeled as counterclaims. But "it makes no difference that [defendant] may have mistakenly designated [his] counterclaim[] as [a] defense, since Federal Rule of Civil Procedure 8(c) provides that 'the court on terms, if justice so requires, shall treat the pleadings as if there had been a proper designation.'" *Reiter v. Cooper*, 507 U.S. 258, 263 (1993).

6

recognize that "when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment arising out of the same transaction or occurrence which is the subject matter of the government's suit." *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir. 1982) (collecting cases). Such waiver is limited. A claim for recoupment may proceed only to "the extent of defeating the government's claim" but not "to the extent of a judgment against the government which is affirmative." *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967). Or, to put it another way, the waiver extends only to the extent that the sovereign's recovery is diminished or defeated. *See United States v. Intrados/Int'l Mgmt. Grp.*, 277 F.Supp.2d 55, 62 (D.D.C. 2003) (quoting *United States v. Agnew*, 423 F.2d 513 (9th Cir. 1970).

While sovereign immunity does not bar Affirmative Defense 2, the Court agrees with the United States that White's claims are legally insufficient. White is seeking to reduce any potential damages on account of the United States alleged conduct during its enforcement of the Clean Water Act. Yet setoff and recoupment allow a defendant to pursue "a reduction in damages based on alleged breach of a legal duty by their counterparty." *TForce Worldwide, Inc. v. ESC Brands, LLC*, No. 1:21cv722, 2022 WL 18491730, at*6 (M.D.N.C. Dec. 12, 2022; *See also United States v. M/V Santa Clara I*, 819 F.Supp.507, 513 (D.S.C. 1993) ("A recoupment counterclaim against the United State must . . . seek relief of the same kind or nature sought by the government.").

Here, the kicker is that the United States isn't seeking damages. It is seeking a civil penalty and injunctive for a violation of the Clean Water Act. The asymmetry in requests prevents White from having a valid claim. *See United States v. Ownbey Enters., Inc.*, 780 F. Supp. 817, 821 (N.D. Ga. 1991) (dismissing counterclaim for recoupment because civil penalties and request for damages were "fundamentally different in scope and nature because they seek to rectify two

7

different types of alleged wrongs."). Accordingly, the Court strikes Affirmative Defense 2 without leave to amend.

Affirmative Defense 4 contends that state permits allegedly authorized White's activities so principles of *res judicata* defeat the United States' claims. The doctrine of *res judicata* precludes parties from relitigating issues that were, or could have been, raised in a prior action that culminated in a final judgment on the merits. *Providence Hall Assocs. Ltd. P'Ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016). For *res judicata* to apply, three elements must be satisfied: "(1) a final judgment on the merits; (2) identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Id.* (quotation and citation omitted).

The United States responds that Affirmative Defense 4 is legally insufficient because White has failed to identify a prior judgment on the merits much less one involving the parties or their privies. White admits that Affirmative Defense 4 was "inartfully denominated as a *[r]es [j]udicata* defense." [DE 19 at 10]. Still, he contends that he should still be able to present the substance of the defense—that his state permits effectively operate as federal permits—in response to defend against the United States' claims. The United States' arguments are more persuasive. Affirmative Defense 4 comes nowhere close to stating a defense of *res judicata*. The pleading, for example, contains no reference to a final judgment on the merits, especially not one involving the parties here. Accordingly, the Court finds that Affirmative Defense 4, as pleaded, is insufficient and strikes it accordingly.

The last two affirmative defenses in this group relate to justiciability: Affirmative Defense 5 is a conclusory assertion that the United States' claims are not yet ripe; Affirmative Defense 13 asserts that the United States lacks standing to pursue a civil action. White's response to the

8

government's motion to dismiss is hard to follow. A charitable reading produces the argument that the United States does not have standing for its enforcement action, which is also not ripe, because it did not first exhaust the administrative appeals for jurisdictional determinations under 33 C.F.R. § 331.1. This argument cannot be squared with the United States' statutory authority to enforce the Clean Water Act. It is alleged that White unlawfully discharged pollutants in violation of 33 U.S.C. § 1311(a). The EPA administrator is expressly authorized to bring a civil action for such violations. 33 U.S.C. § 1319(b); *see Sackett*, 598 U.S. at 661 ("The EPA is tasked with policing violations after the fact . . . by bringing civil actions."). Nothing in the statute requires the United States to first exhaust an administrative appeal. The Court thus strike Affirmative Defenses 5 and 13 without leave to amend.

B. Affirmative Defenses the United States contends are inadequately pleaded.

The second group of defenses are those the United States contends are inadequately pleaded. As a threshold matter, the parties dispute the proper pleading standard for affirmative defenses: the United States argues that the more stringent standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), control whereas White contends that affirmative defenses must satisfy only the traditional notice standard set forth in Rules 8(b) and 8(c). The Fourth Circuit has acknowledged that district courts have disagreed over the proper standard but has yet to resolve the split among the district courts. *See, e.g., Bakery & Confectionary Union & Industry Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 700 n.5 (4th Cir. 2018). And, in the absence of any controlling circuit precedent, district courts have come down on either side of the issue.[2]

---

[2] *See ISK Biocides, Inc. v. Pallet Mach. Grp. Inc.*, No. 3:21-cv-386, 2022 WL 19976543, at *2 n.1 (E.D. Va. Jun. 14, 2022) *Twitty v. First Fin. Asset Mgmt., Inc.*, No. 0:23-39, 2023 WL 2478365, at *1–2 (D.S.C. Mar. 13, 2023); *Shanti Wines, LLC v. Shanti Elixirs, LLC*, No. 1:22-cv-00262, 2023 WL 562073, at *1 (W.D.N.C. Aug. 20, 2023) (collecting cases); *but see Jones v. Aberdeen Proving Ground Fed. Credit*

9

It is unnecessary for this Court to take a side because even under the more liberal pre *Twombly-Iqbal* pleading standard many of White's affirmative defenses are inadequately pleaded. To meet that standard, defenses must be " 'stated in an intelligible manner' in order to give the opposing party 'adequate notice' of the nature of the defense." *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 753 F.Supp.2d 721, 726 (W.D. Va. 2010) (quoting *Davis v. Sun Oil Co.*, 148 F.3d 606, 614 (6th Cir. 1998) (Boggs, J., concurring in part and dissenting in part)); *See also Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004) ("[A]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." (quotation and citation omitted)). To that end, defenses must not be "contextually incomprehensible". *Odyssey Imaging*, 753 F.Supp.2d. at 727. And "[b]are bones conclusory allegations" that omit "any short and plain statement of fact and fail[] totally to allege the necessary elements of alleged claims" don't meet the standard. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir. 1989).

Affirmative Defense 6—that the United States' "allegations and claims are barred . . . by the doctrine of waiver," [DE 9 at 14]—lacks reference to the facts. "[E]ven before *Twombly* and *Iqbal*, the defense[] of waiver . . . [was] consistently struck when pled without reference to some facts." *Topline Sols., Inc. v. Sandler Sys., Inc.*, No. L-09-3102, 2010 WL 2998836, at *2 (D. Md. Jul. 27, 2010). Contextually incomprehensible, Affirmative Defense 6 simply asserts that waiver bars the United States' claims but makes no attempt to connect his legal theory to the facts much less the elements of the claims. Consequently, the Court strikes the defense.

Additionally, some of White's affirmative defenses are inadequately pleaded because they are not affirmative defenses at all. "A defense which demonstrates that plaintiff has not met its

---

*Union*, No. ELH-21-1915, 2022 WL 2703825, at *4 (D. Md. Jul. 12, 2022) (collecting cases applying *Twombly-Iqbal* standard to affirmative defenses).

10

burden of proof as to an element plaintiff is required to prove is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *See also Small Bus. Fin. Sols., LLC v. Cavalry*, No. DKC-22-1383, 2023 WL 284449, at *11 (explaining that an affirmative defense is that which defeat a plaintiff's claims even if plaintiff proves its prima facie case). Affirmative Defense 9, which alleges that each of the United States' "claims[s] or cause[s] of action in the Complaint are barred in whole or in part for failure to state claim upon which relief can be granted," is not an affirmative defense. *See Odyssey Imaging, LLC*, 753 F.Supp.2d at 727.

Likewise, both Affirmative Defense 12, which contends that White complied with all applicable laws, and Affirmative Defense 11, which claims that White's actions were authorized by law, seek only to negate what the United States is required to prove. *See, e.g.*, *Greenfield v. Cross River Bank*, No. 21-cv-09296, 2023 WL 4567098, at *4 (N.D. Cal. Jul 17, 2023) (striking affirmative defense of compliance with applicable laws because it is not an affirmative defense). Accordingly, the Court will strike Affirmative Defense 9, 11, and 12 without leave to amend. White, however, remains free to raise these arguments against the United States' case-in-chief in the normal course.

For similar reasons, Affirmative Defense 14, which purports to preserve White's right to raise additional defenses, is not an affirmative defense at all. Again, an affirmative defense seeks to defeat liability by raising something outside the plaintiff's prima facie case. A reservation of rights to amend has no bearing on liability. What's more, White cannot construct an end-run around Rule 15(a)'s limits on amendments to the pleadings by reserving the right in answer. Once a party no longer has leave to amend as a matter of course, only the opposing party or the court may give leave to amend. Fed. R. Civ. P. Rule 15(a)(2). The Court therefore strikes Affirmative Defense 14 without leave to amend.

## II.     Defendant's Motion to Stay.

White moves the Court to stay proceedings pending the EPA and Army Corps promulgating a new rule. The United States opposes the motion. The power to stay proceedings is party of the Court's power to control its own docket. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706 (1997). When determining if a stay is warranted, district courts generally consider "(1) the interests of judicial economy; (2) the hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Johnson v. DePuy Orthopaedics, Inc.*, No. 3:12-CV-2274, 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012) (internal quotation marks and citation omitted). The moving party must justify the stay by clear and convincing circumstances that outweigh the potential harm to the non-moving party. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

Applying these factors, the Court concludes that White has not shown by clear and convincing circumstances that a stay is warranted. The gravamen of White's argument for a stay is that the definition of "Waters of the United States" lacks certainty until the EPA and Army Corps' new rule is issued and then applied to the case. To that end, it asks that the Court stay the case for 21 days after the final rule is issued. This concern is largely moot. The EPA and Army Corps issued a new, revised definition of "Waters of the United States" on 8 September 2023.

What's more, the circumstances of the rule change weighs against White's concerns. Indeed, the sole purpose of the new rule is to conform the definition of "waters of the United States" to the Supreme Court's interpretation of the same in *Sackett*. *See* Revised Definition of "Waters of the United States"; Conforming, 88 Fed. Reg. 61964, 61965 (Sept. 8, 2023) (to be codified at 33 CFR pt. 328; 40 CFR pt. 120) ("this rule does not impose any burdens . . . it merely conforms the [old] Rule to the Supreme Court's decision in *Sackett* . . . ."). *Sackett* was decided in

June. Since then, White has been on notice of the content of the new rule. Needlessly prolonging this litigation would do a disservice to the parties and to judicial economy. Besides, any argument about how the revised definition of "waters of the United States" applies to the facts can be raised at summary judgment. The Court, in the exercise of its discretion, denies White's motion to stay.

### III. Discovery Motions.

The last group of motions concern the production of White and Frog Island Seafood, Inc.'s financial information. The briefing represents that the parties have been able to resolve some of their discovery disputes while their motions have been pending. Consequently, it is not entirely clear what has been disclosed by this point, as best as the Court can tell, the United States seeks responsive discovery to requests 20–45 in its first request for production as to White [DE 32-2], non-duplicative responses to requests 20–45 in its subpoena on Frog Island [DE 32-10], and the production of documents as listed in its subpoena to Sykes & Company, P.A., [DE 36-1].

A. Objections to the discovery requests and the United States' motion to compel.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). Relevancy is a low threshold. "Information is relevant, for discovery purposes, if it bears on or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Kidwilder v. Progressive Paloverden Ins. Co.*, 192 F.R.D. 193, 199 (D.W.V. 2000) (cleaned up) (quotation marks and citation omitted). This standard also determines relevance for subpoenas under Rule 45. *See Bamonte v. Charatan*, No.7:22-CV-795, 2023 U.S. Dist. LEXIS 192072, at *10 (S.D.N.Y. Oct. 18, 2023); *Stati v. Republic of Kaz.*, No. 14-1638, 2020 U.S. Dist. LEXIS 107574, at *11 (D.D.C. Jun. 5, 2020). The discovery "rules are to be given a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1957). And the "party resisting

13

discovery bears the burden of showing why it should not be granted." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).

The Court agrees that the United States is entitled to the requested financial information from both White and Frog Island. The financial information is necessary to calculate any civil penalties under § 1319(d), which includes consideration of the "economic impact of the penalty on the violator." Clearly the requested discovery will bear on an issue in the case. White raises several concerns in his opposition brief. The protective order discussed below remedies many of them. But, to address his concern that he or Sykes will have to create new documents, the Court notes that Rule 34 requires a party only to produce relevant documents that exist. It does not require a party to spring into action to create a document. *Harris v. Advance America Cash Advance Ctrs., Inc.*, 288 F.R.D. 170 (S.D. Oh. 2012). With the question of the United States' entitlement to the discovery sought resolved, the Court turns to the motion to compel production.

When "a party fails to produce documents . . . as requested under Rule 34," the "party seeking discovery may move for an order compelling . . . production . . . ." Fed. R. Civ. P. 37(a)(3)(B). The district court is afforded substantial discretion in managing discovery and deciding whether to grant or deny a motion to compel. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). If the motion to compel is granted or the requested discovery is produced while the motion is pending, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). That payment, however, must not be ordered if other circumstances make the award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(iii).

White has withheld relevant financial information responsive to the United States' requests for production. His submissions to the Court, however, represent that his objection to production rests primarily on the absence of a protective order. To the extent he raises other objections, the Court has considered the arguments presented and is not persuaded. Although White has failed to produce the responsive documents, the Court finds that it would be unjust to penalize him. After reviewing the record and all relevant matters, the Court notes counsels' efforts to resolve most of their substantive disagreements without judicial intervention. The Court therefore declines to make any such award. Still White must produce those documents responsive to the United States' first request for production [DE 32-2] and subpoena to Frog Island [DE 32-10] within 10 days of this order. Those productions will be subject to the protective order adopted in this order.

Having established that the documents are relevant and that White must produce them, the Court turns to Sykes' motion to quash. Sykes moves to quash the subpoena primarily for two reasons: (1) that state and federal laws prohibit it from releasing its client's tax or financial information absent authorization from its client or a court order; and (2) that producing the requested discovery within the subpoena's time frame would pose an undue burden because of the voluminous nature of the discovery and Sykes obligations to complete other client's tax filings.

It is unnecessary to linger over these objections. Each of the state and federal laws cited by Sykes (if they apply at all) contain exceptions for disclosures made subject to a court order.[3] *See* 26 U.S.C. § 7216(b)(1)("Subsection (a)," which makes it a felony for a preparer to disclose information given in connection with preparing a return, "shall not apply . . . if such disclosure is

---

[3] Sykes' motion to quash cites several North Carolina statutes prohibiting public officials or employees from disclosing tax information. *See* N.C. Gen. Stat. §§ 105-259(state); 153A-148.1 (county officials);160A-208.1 (local officials). The Court struggles to grasp how these statutes apply to the dispute here. But any confusion is remedied by those statutes express exceptions for court ordered disclosure. N.C Gen. Stat. §§ 105-259(b)(1); 153A-148.1(a)(1), 160A-208.1(a)(1);

15

made . . . pursuant to an order of a court."); *see* N.C. Gen. Stat § 75-28 ("[Except in accordance with proper judicial order . . . it shall be unlawful for any person" to disclose information given to the preparer."). And as to Sykes's remaining objections, since the subpoena was served it has had ample time to compile the requested discovery in its possession, custody, or control. Again, the documents are relevant to an issue in the case and are reasonably targeted given White's alleged violations. The Court, therefore, denies Sykes motion to quash the subpoena and orders Sykes to produce the responsive documents in its possession, custody, and control within 10 days of this order. Productions shall be subject to the protective order set forth below.

B. Scope of the protective order.

White and the United States not only agree that a protective order is necessary but also to a vast majority of the proposed terms. They remain at odds over language in three sections: the United States' proposed order contains language that would allow information subject to the protective order to be disclosed to federal law enforcement for purposes beyond the current litigation and without restrictions upon the completion of the current litigation. [DE 41-1]. White's version omits this language. [DE 44-1].

The United States contends its provisions are necessary given its attorneys' ethical and legal obligations, which might be triggered by a document produced. The defendant responds that the provisions frustrate the objectives of civil discovery, full and fair disclosure, and that the United States' position is not supported by any applicable statutory reporting requirement.

Under Rule 26(c) of the Federal Rules of Civil procedure, a court may issue a protective order limiting the use of confidential or sensitive information. To obtain a protective order to shield confidential information, the party seeking the order must show that the information is confidential and disclosure would create a risk of harm. *See Fontem Ventures B.V. v. R.J. Reynolds Vapor Co.*,

16

No. 1:16-cv-1255, 2017 WL 2266868, at *1 (M.D.N.C. May 23, 2017). As with discovery generally, the scope of a protective order is within the discretion of the district court. *See, e.g., Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995).

Here, the dispute is not about the need for a protective order, but how far that order will go. In seeking to limit the United States' ability to share protected information for law enforcement purposes, White seeks a more restrictive protective order. The party seeking a protective order carries the burden of showing its necessity and must show that good cause exists. *See Avirgan v. Hull*, 118 F.R.D. 252, 253–54 (D.D.C. 1987) (remarking that the court's focus is on whether the movant shows good cause). However, besides taking aim at the government attorneys' reporting obligations, White devotes little effort to showing that good cause exists for *his* proposed protective order. The Court is unpersuaded by his generalized concerns that giving the United States access to his financial information might result in federal law enforcement taking action that could be harmful to him. *See United States v. Elsass*, No. 2:10-CV-336, 2011 WL 335957, at *5 (S.D Ohio Jan. 31, 2011) (refusing to enter protective order that would "restrict . . . the ability of the Government to enforce the laws" when defendants put forward only fears of government abuse without evidence that the government plans to do so); *See also S.E.C. v. AA Cap. Partners, Inc.*, No. 06-51049, 2009 WL 3735880, at *3 (E.D. Mich. Nov. 3, 2009) (refusing to issue protective order that would limit "SEC's ability to assist other agencies" by providing documents relevant to a criminal investigation). Because White has failed to show that good cause exists for his proposed protective order, the Court adopts the United States' proposed protective order [DE 41-1].

C. <u>United States' motion to modify the 20 April 2023 Scheduling Order</u>.

The last discovery motion is the United States' request for a limited modification of the 20 April 2023 Scheduling Order, [DE 16]. The United States' requests a 45-day extension because it

17

Case 2:23-cv-00001-BO-RN   Document 50   Filed 12/06/23   Page 17 of 19

was unable to discover the documents subject to the dispute. Furthermore, it asks the Court to extend the remaining pretrial deadlines by 45 days as well. The Court, in the exercise of its discretion, concludes that good cause for an extension exists. It declines, however, to adopt the United State's proposed extension, which would expand fact discovery only to satisfy its requests for documents. The Court prefers the certainty and comprehensives of one deadline for all fact discovery. Accordingly, it adjusts the deadline as set forth in this order.

## IV. United States's Motion for Court-Hosted Mediation.

Finally, the United States moves this Court to order a court-hosted settlement conference. [DE 21]. White does not oppose a form of alternative dispute resolution but requests that mediation before a certified mediator instead. The Court, in the exercise of its discretion, denies the United States request for a court-hosted settlement conference.

## CONCLUSION

For these reasons, the Court ORDERS as follows: United States' motion to strike [DE 11] is GRANTED; United States' motion for court-hosted mediation [DE 21] is DENIED; White's motion to stay [DE 25] is DENIED; United States' motion to compel [DE 31] is GRANTED; non-party Sykes & Company, P.A.'s motion to quash [DE 36] is DENIED; United States' motion for protective order [DE 40] is GRANTED and its proposed protective order [DE 41-1] is ADOPTED; White's motion for a protective order [DE 44] is DENIED.

The United States' motion for a limited modification of the scheduling order [DE 42] is GRANTED IN PART and the scheduling order [DE 16] is modified as follows:

   a. The parties shall have by and through 18 January 2024 to complete fact discovery.

   b. The parties shall have by and through 30 May 2024 to complete expert discovery.

   c. The parties shall have by and through 29 February 2024 to make initial expert disclosures.

18

d. The parties shall have by and through 1 May 2024 to make rebuttal expert disclosures.

e. The parties shall have by and through 15 July 2023 to file any dispositive motions.

SO ORDERED, this __4__ day of December 2023.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

19